UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| STACY BLACKBURN, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:19-cv-00457-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| MEDTRONIC, INC., *et al.*, ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 28, 2020, the Court consolidated this case with the action styled *Stacy Blackburn v. Michael Tipton, et al.*, Civil No. 5:19-cv-00502-GFVT. Each matter is now before the Court on two pending motions. In the present case, Civil No. 5:19-cv-00457-GFVT (*Blackburn I*),[1] Plaintiff's Motion to Dismiss and alternative Motion to Remand are pending. [R. 9.] And, in Civil No. 5:19-cv-00502-GFVT (*Blackburn II*), Defendants' Motion to Dismiss and Plaintiff's Motion to Remand are pending. [R. 5; R. 7, *Blackburn II*.] For the reasons that follow, Plaintiff's Motion to Remand and Motion to Dismiss in *Blackburn I*, along with Defendant's Motion to Dismiss in *Blackburn II*, are **DENIED**, and Plaintiff's Motion to Remand in *Blackburn II* is **GRANTED**.

I

On September 4, 2019, Ms. Blackburn filed her original state court complaint in Fayette County Circuit Court against Medtronic, Inc., Medtronic USA, Inc., Medtronic Sofamor Danek USA, Inc., Covidien Sales, LLC, and Covidien Holding, Inc. [*See* R. 1-2 at 56–57.] At base,

---

[1] For purposes of clarity, the Court adopts the *Blackburn I* and *Blackburn II* designations formulated by Defendants. [*See* R. 18 at 1.] Prior to Section II.B, any citation to the record that does not indicate otherwise will refer to filings in *Blackburn I*, Civil No. 5:19-cv-00457-GFVT.

Ms. Blackburn alleges that a medical device produced and sold by the corporate Defendants malfunctioned during her weight loss surgery and caused injury. [R. 1-2 at ¶¶ 8–9, 13–18.] This established, for present purposes, the manner in which the parties have litigated these cases requires more detailed consideration. Taken together, the cases present an unusual and interwoven procedural history.

After filing her original complaint, Ms. Blackburn submitted interrogatories asking Defendants to "1) name all its agents and/or employees who communicated with the Plaintiff and 2) the substance of any instructions provided by Defendants' sales representatives to Plaintiff's surgeon." [R. 9-1 at 1–2; *see also id.* at 21–22, 24.] Defendants declined to identify any agents or employees in response to these interrogatories. [*See* R. 9-1 at 2.] Subsequently, Ms. Blackburn says she received an affidavit from William McElwain on November 18, 2019, the Risk Management Director at Baptist Health, which identified a Michael Tipton as a sales representative for the Defendants. [R. 9-1 at 1–2; R. 9-1 at 26.] Mr. McElwain's affidavit further stated that following Ms. Blackburn's procedure, "that same day, Michael Tipton took the surgical device used on Ms. Blackburn." *Id.* at 26. Based on this information, Ms. Blackburn says she "propounded supplemental discovery upon Defendants, including asking Defendants to admit that Michael Tipton is an agent and/or employee of Defendants and is a citizen and resident of Kentucky[.]" *Id.* at 1–2.

Before responding to those discovery requests, Defendants filed a Notice of Removal. [*Id.*; *see* R. 1.] Ms. Blackburn argues that Defendants' decision to file their Notice of Removal shortly after receiving the requests for admission was a "strategic decision" which prevented her from "appropriately amend[ing] her Complaint to include Mr. Tipton as a party in her original state court action." *Id.* at 3.

Ms. Blackburn "responded on multiple fronts" to Defendants' decision to remove. [R. 6-1 at 3, *Blackburn II*.] First, she filed "a second state court Complaint in the Fayette Circuit Court" which, following removal, became *Blackburn II*. *Id.* In the *Blackburn II* complaint, Ms. Blackburn named the "same Corporate Defendants" as in *Blackburn I*, "but also alleg[ed] negligence, violation of Kentucky's Consumer Protection Act, breach of express and implied warranty, and punitive damages against Mr. Tipton." [R. 6-1 at 3, *Blackburn II*.] After Defendants removed *Blackburn II*, Ms. Blackburn moved to remand based on (1) Mr. Tipton's presence as a non-diverse Defendant and (2) Defendants' alleged failure to establish that the case exceeds the required amount-in-controversy. [R. 6-1 at 5, 13, *Blackburn II*.] In turn, Defendants moved to dismiss *Blackburn II* for failure to state a claim. [*See* R. 5 at 1, *Blackburn II*.]

Along with commencing a separate action, Ms. Blackburn also addressed Defendants' initial removal in *Blackburn I*, the initial action. Here, Ms. Blackburn moved to dismiss based on Defendants' alleged failure to include Mr. Tipton as an indispensable party and moved to remand based on Defendants' failure to establish that the action exceeds the required amount-in-controversy.[2] [*See* R. 9-1.] Defendants argue both *Blackburn I* motions lack merit. [R. 10.]

## II

### A

Resolution of the various motions requires the Court to consider the interplay between the two cases but ultimately, even after consolidation, each case retains it separate identity. *First Nat. Bank of Pulaski v. Curry*, 301 F.3d 456, 467 (6th Cir. 2002) ("Despite the consolidation of the two actions in the present case, then, the actions did 'not merge . . . into a single cause.'");

---

[2] As addressed below, following consolidation, Ms. Blackburn represents that only her arguments related to Defendants' failure to exceed the required amount in controversy remain pertinent as it relates to her *Blackburn I* motions. [R. 17 at 1–2.]

3

*see also Payne v. Merrill Lynch, Pierce, Fenner And Smith, Inc.*, 75 F. App'x 903, 906 (4th Cir. 2003) (citing *First Nat. Bank*, 301 F.3d at 467–68) (explaining that, after consolidation, courts must still make independent determinations when determining whether to remand two related cases). The Court will first address Plaintiff's Motion to Dismiss and alternative Motion to Remand in *Blackburn I*, the lead case. [R. 9.] In Ms. Blackburn's status report following consolidation, she represents she no longer has any legal basis to request dismissal under Fed. R. Civ. P. 19. [R. 17 at 1.] Accordingly, Plaintiff's Motion to Dismiss is **DENIED AS MOOT**. All that remains to be considered in *Blackburn I* is Plaintiff's Motion to Remand.

### 1

A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. A federal district court has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" those who are "citizens of different states." 28 U.S.C. § 1332(a)(1). In making this assessment, a court considers whether federal jurisdiction existed at the time of removal. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). As such, the amount in controversy is evaluated as of the time of removal. *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 769–70 (6th Cir. 2009) (citation omitted). Because federal courts are courts of limited jurisdiction, "the removal statute should be strictly construed," and any doubts are resolved in favor of remanding the case to state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006).

The principal dispute in *Blackburn I* is whether the amount in controversy requirement of $75,000 is met.[3] [*See* R. 8; R. 9.] Where, as here, a plaintiff's complaint requests an indeterminate amount in damages, the "[c]ourt places a burden on a defendant seeking to remove an action to federal court to show by a preponderance of the evidence that the amount in controversy requirement has been met." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). However, "this standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Id.* (cleaned up). Where discovery is incomplete, "courts permit removing parties to rely, for estimation purposes, on reasonable multipliers/ percentages." *Hacker v. Aetna Life Ins. Co.*, No. 6:18-CV-334-REW-HAI, 2019 WL 638369, at *2 (E.D. Ky. Feb. 13, 2019) (citations omitted). As part of this analysis, courts are to consider punitive damages "unless it is apparent to a legal certainty that such cannot be recovered." *Hayes*, 266 F.3d at 572 (citation omitted). Finally, the removing party is not required to seek information from the Plaintiff regarding damage claims through interrogatories or other discovery. *See Van Skyhawk v. Nationwide Mut. Ins. Co.*, 2005 WL 3448064, *2 (E.D. Ky. 2005).

### 2

In support of remand, Ms. Blackburn argues "Defendants have failed to present any evidence, let alone a 'preponderance of the evidence,' that Plaintiff's claims exceed the jurisdictional requirements of this Court." [R. 9-1 at 12.] In response, Defendants contend that even a conservative estimate of Plaintiff's alleged damages exceeds the $75,000 threshold. [R.

---

[3] As noted by Defendants, "Plaintiff is not seeking to join Michael Tipton or file an amended complaint asserting claims against Michael Tipton" and, given that the remainder of Defendants are diverse, diversity of citizenship is not at issue in *Blackburn I*. [R. 10 at 5; *see also* R. 1 at 3–5.]

10 at 4.] Defendants are correct—they have proven by a preponderance of the evidence that the amount in controversy exceeds $75,000.

In the *Blackburn I* complaint, Ms. Blackburn seeks damages for the following injuries: (i) past and future medical expenses; (ii) past and future pain and suffering; (iii) loss of enjoyment of life; (iv) past and future wage loss; (v) replacement services; (vi) punitive damages; (vii) permanent physical impairment; (viii) damages for impairment of her ability to work and earn money in the future; and (ix) reasonable attorneys' fees. [R. 1-2 at 72.] To establish the requisite amount in controversy in their notice of removal, Defendants largely rely on Ms. Blackburn's representation as to one category of damages: that her past medical expenses amount to $141,515.57. [R. 1 at ¶ 22; R. 1-3 at 10.] Applying what they contend are reasonable multipliers to this amount, Defendants concluded Ms. Blackburn's damages exceeded $75,000. [R. 1 at ¶ 24.]

The record shows that this evidence is all Defendants had to rely on for this determination. Review of Ms. Blackburn's answers to Defendants' interrogatories supports their contention that, outside of medical expenses, she "failed to respond in any way as to the amount of any additional categories of damages . . . ." *Id.* at ¶ 22. Similarly, when asked directly, Ms. Blackburn declined to admit or deny that the total amount in controversy exceeded $75,000. [R. 1-5 at 1.]

Ms. Blackburn certainly may decline to answer certain discovery requests but, at that point, Defendants may then rely on reasonable estimations to determine the amount in controversy. *Hacker*, 2019 WL 638369, at *2. That is what Defendants have done here. Defendants applied conservative multipliers to the medical expenses amount of $141,515.57 and came to the reasonable conclusion that the total amount in controversy exceeds $75,000. As set forth in Defendants' response to Ms. Blackburn's motion to remand, "if Plaintiff chose only to

6

seek recovery for twenty percent of her hospital bills (approximately $21,000), plus punitive damages of twice that amount ($42,000) and attorney fees of thirty percent ($18,900), that would amount to $81,900 total."[4] [R. 10 at 4.] And that is only three of the nine categories of damages sought by Ms. Blackburn. On the facts available, Defendants' estimation of the amount in controversy is eminently reasonable. *See Hacker*, 2019 WL 638369, at *2 (citing multiple cases in which courts in this circuit approved of defendants' use of less conservative multipliers).

In sum, this is not a case where Defendants have provided no quantifiable evidence as to the amount in controversy—leaving the Court with nothing but speculation. *See Halsey v. AGCO Corp.*, 755 F. App'x 524, 528 (6th Cir. 2018). Instead, Defendants reasonably relied on the limited evidence in the record and, making conservative estimates, concluded the amount in controversy exceeded $75,000. Ms. Blackburn's Motion to Remand in *Blackburn I*, based on Defendants' alleged failure to establish the requisite amount in controversy, is **DENIED**.

**B**

The *Blackburn I* motions resolved, the Court turns to Ms. Blackburn's Motion to Remand and Defendant's Motion to Dismiss in *Blackburn II*. First, the Motion to Remand.[5]

**1**

Generally, when an action is removed based on diversity there must be complete diversity at the time of removal. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). However, the judicially created doctrine of fraudulent joinder "provides an exception to the requirement of

---

[4] Defendants' math seems to be slightly off. Twenty percent of $141,515.57 is closer to $28,000, not $21,000. And, double $28,000 is $56,000, resulting in a subtotal of $84,000. Thirty percent of the subtotal is approximately $25,000 which, added to $84,000, results in a conservative total estimate of $109,000, not $81,900. Nonetheless, as Defendants actually *undersold* the total amount in controversy, this apparent miscalculation does not meaningfully impact the analysis.

[5] As included within Section II.B, citations to the record that do not indicate otherwise will refer to filings in *Blackburn II*, Civil No. 5:19-cv-00502-GFVT.

complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Pursuant to this doctrine, the presence of the non-diverse defendants "will not defeat removal on diversity grounds" where the removing party presents "sufficient evidence that a plaintiff could not have established a cause of action against [the] non-diverse defendants . . . ." *Coyne*, 183 F.3d at 493 (citation omitted). A plaintiff's motive is largely immaterial; the "question is whether a claim could be stated against the party, not why the plaintiff joined the party." *Cibik v. Kmart Corp.*, No. 1:05 CV 923, 2005 WL 8166148, at *3 (N.D. Ohio Aug. 29, 2005).

In undertaking the fraudulent joinder inquiry, the benefit of the doubt is given to plaintiffs. "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] [c]ourt must remand the action to state court." *Coyne*, 183 F.3d at 493. Further, "any disputed questions of fact and ambiguities in the controlling state law should be resolved in favor of the nonremoving party." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (cleaned up). Finally, the court is "generally limited to piercing the pleadings in search of *undisputed* facts that negate the underlying claim and, even within this context of limited piercing, must draw any contested issues of fact in the plaintiff's favor." *Newsome v. Bayer Corp.*, No. 7:17-CV-57-KKC, 2018 WL 1906103, at *4 (E.D. Ky. Apr. 23, 2018) (emphasis in original).

## 2

### a

Ms. Blackburn originally filed *Blackburn II* in state court and, on December 26, 2019, Defendants removed on the basis of federal diversity jurisdiction. [R. 1; R. 1-9.] In their notice of removal, Defendants acknowledge the presence of a non-diverse defendant, Mr. Tipton, but argue his presence should be disregarded "because he is fraudulently joined." [R. 1 at 6.] Ms.

Blackburn disagrees and has moved to remand *Blackburn II*, arguing that Defendants, as the removing parties, have failed to demonstrate that Mr. Tipton was fraudulently joined. [*See* R. 6-1 at 4.] In this motion to remand, Ms. Blackburn's arguments carry more weight. Defendants fail to establish that there is no colorable basis for Ms. Blackburn's claims against Mr. Tipton.

The parties' arguments on this issue largely center around whether Ms. Blackburn has stated a viable negligence claim against Mr. Tipton. [R. 6-1 at 7–12; R. 8 at 2; R. 9 at 2–5.] To properly address this issue, the Court must first briefly consider Mr. Tipton's role in the events which led to Ms. Blackburn's alleged injuries. As noted, at base, Ms. Blackburn alleges that a medical device produced and sold by the corporate Defendants malfunctioned during her weight loss surgery and caused injury. [R. 1-9 at ¶¶ 8, 13–18.] The surgeon's operative notes indicate that, upon malfunction, "Covidien representatives were called to help troubleshoot" but that, ultimately, fixing the malfunction was "deemed a fut[ile] pursuit." [R. 1-9 at ¶ 14.] This is where Mr. Tipton comes in.

In Mr. Tipton's affidavit, he represents that he serves as an "Executive Surgical Device Specialist" for Defendant Medtronic which, in plain terms, means he is a "sales representative for surgical stapling products," including the device at issue. [R. 1-3 at ¶¶ 3–4.] Following preliminary discovery, Ms. Blackburn states that Mr. Tipton, "[u]pon information and belief, . . . is the same individual who provided troubleshooting instructions to Plaintiff's treating surgeon during the [surgery]." [R. 6-1 at 3; *see id.* at 60.] This established, the question is whether, under Kentucky law, Ms. Blackburn can state a viable negligence claim against Mr. Tipton.

9

**b**

**i**

Kentucky law places separate and independent liability from the principal on agents for their own tortious acts. *See Carr v. Barnett,* 580 S.W.2d 237, 240 (Ky. App. 1979) (citation omitted); *see also Cohen v. Allian Enters., Inc.*, 60 S.W.3d 536, 539 (Ky. 2001). Indeed, the Sixth Circuit recently noted in *Terry v. Jackson*, 19 F. App'x 377, 379 (6th Cir. 2001) (unpublished), that "[t]here is no authority under Kentucky law that an individual is not jointly and severally liable for torts committed within the scope of employment." *See also* RESTATEMENT (THIRD) OF AGENCY § 7.01 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."). So, even if corporate Defendants assume responsibility for Mr. Tipton's acts, this does not mean he is not a proper defendant.

To succeed on her negligence claim against Mr. Tipton, Ms. Blackburn must establish duty of care, breach of that duty, and consequent injury. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Here, Ms. Blackburn alleges, in part, that Mr. Tipton's duty arose in the context of the troubleshooting instructions given *during* her surgery. And that, in failing to rectify the malfunction, he breached his duty, leading to her alleged injuries. [R. 1-9 at ¶¶ 55, 56.] On the present record, these allegations are sufficient to establish a colorable claim of negligence.

Limited discovery has taken place to this point. But Ms. Blackburn's belief that Mr. Tipton was representative who offered the troubleshooting instructions mid-surgery appears well

founded.[6] [*See* R. 1 at ¶ 57; R. 1-3.]  Further, while the content of the instructions is unknown to this point, the surgeon's operative notes reflect that when the malfunction occurred, Mr. Tipton was called and, forty-five minutes later, the problem was still not fixed.  [R. 1-9 at ¶ 14.]  It is reasonable to assert that a duty arose on the part of Mr. Tipton when contacted mid-surgery, especially where he attempted to help the surgeon fix the malfunction.  And, without further discovery, it would be premature to say that duty of care was *not* breached.  More discovery is needed on many topics, including: (1) whether Medtronic/ Covidien or Mr. Tipton, as their representative, had agreed in advance to "troubleshoot" in these instances; (2) the substance of the instructions given by Mr. Tipton during surgery; and (3) whether these instructions contributed to Ms. Blackburn's injuries.

In this way, this case is distinguishable from *Anderson v. Merck & Co.*, 417 F. Supp. 2d 842, 844 (E.D. Ky. 2006), a case relied on heavily by Defendants.  In *Anderson*, plaintiffs brought negligence claims against pharmaceutical sales representatives for their role in marketing a drug to doctors which was then prescribed to plaintiffs.  Specifically, plaintiffs alleged that the sales representatives "knew or should have known of the risks associated with [the drug] and promoted the drug to each Plaintiff's physician without warning the physicians of the 'serious side effects and dangerous risks to the consuming public.'" *Anderson*, 417 F. Supp. 2d at 845.  The *Anderson* court found the plaintiffs had not set forth a colorable cause of action for negligence, explaining that their allegations did not show a "causal nexus between the Sales Representatives' actions and Plaintiffs' injuries." *Id.* at 846.  In contrast, here, the causal nexus is more apparent on the pleadings.

---

[6] Construing questions of fact in favor of Ms. Blackburn, the Court will assume for purposes of this Order that Mr. Tipton was the representative who provided the troubleshooting instructions.  *See Coyne*, 183 F.3d at 493.

11

For one, Mr. Tipton was contacted to give troubleshooting instructions specifically as it related to the device being used in Ms. Blackburn's surgery. Indeed, Ms. Blackburn alleges Mr. Tipton misrepresented the safety and efficacy of the product to her surgeon *during* her surgical procedure. [R. 1-9 at 15.] This is much different from *Anderson* where the representatives never attempted to describe the safety or efficacy of the drugs as applied to a specific patient. *See id.* If proven, Ms. Blackburn's allegation may very well be the basis for a colorable negligence claim against Mr. Tipton. Notably, while this may be a novel theory of liability, "[n]ovelty does not necessarily render a claim inoperative." *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 697 (W.D. Ky. 2019) (citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999)).

## ii

Finally, the Court reemphasizes the limited nature of the fraudulent joinder inquiry. At this point in the litigation, it is not the role of the Court to determine as a matter of law if Ms. Blackburn can prevail. *See Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 697 (W.D. Ky. 2000). Rather, this Court must examine the pleadings for allegations, which if proven, would provide a reasonable basis for a finding of liability against Mr. Tipton. *See id.* As noted above, all doubts regarding questions of fact and ambiguities in the controlling state law must be resolved in Ms. Blackburn's favor. *See Coyne*, 183 F.3d at 493.

Unfortunately, many of the facts that might inform an analysis of whether Ms. Blackburn's claim against Mr. Tipton is colorable are not before the Court. While, as a general matter, the Court is constrained to make rulings based on the record before it, that does not mean it cannot consider the reasons for the limited factual development. Here, Defendants' conduct in the context of discovery and the timing of their decision to remove is relevant. In discovery in *Blackburn I*, Ms. Blackburn submitted an interrogatory requesting "a detailed description of the instructions and troubleshooting guidelines Defendants and/or their sales representatives provide

to treating physicians with respect to the use of the medical devices at issue including but not limited to . . . how such guidelines and instructions are communicated to physician." [*See* R. 6-1 at 58.] The Corporate Defendants declined to respond, finding the interrogatory "vague, ambiguous, and undefined." *Id.*

A full response which attempted to answer Ms. Blackburn's interrogatory likely would have provided significant information related to Ms. Blackburn's claim against Mr. Tipton. At the very least, a full response would have provided the content of the troubleshooting instructions themselves—instructions which Ms. Blackburn believes may have contributed to bringing about her injuries. This information would bear directly on the question of whether Ms. Blackburn can state a colorable negligence claim against Mr. Tipton. Instead, Defendants gave as little information as possible and then, shortly after Ms. Blackburn learned of Mr. Tipton through the hospital, decided to remove. The resulting lack of factual development cannot be construed against Ms. Blackburn, the nonremoving party.

Resolving all doubts in favor of Ms. Blackburn, this Court finds that her allegations, if proven, would create a colorable claim for negligence against Mr. Tipton under Kentucky law. As such, Defendants have not met the heavy burden of establishing fraudulent joinder and so the proper course of action "is for the court to remand the case and allow the state court to dismiss the claims against the non-diverse defendant[] if those claims truly present no hope of success." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011). Plaintiff's Motion to Remand in *Blackburn II* is **GRANTED**.

**III**

The litigations tactics employed by the parties to this point present an unusual procedural posture and an underdeveloped record. Nonetheless, that is the record before the Court and the present rulings are confined to resolving the issues as presented. These rulings will result in an

13

unusual state of affairs. Going forward, Ms. Blackburn must proceed in federal court with her claims against the corporate Defendants in *Blackburn I* and may proceed in state court with her claims against the corporate Defendants and Mr. Tipton in *Blackburn II*. Given these unique circumstances, consistent with the below directives, the parties are directed to file additional briefing addressing whether this Court should abstain from exercising jurisdiction in *Blackburn I* in light of the decision to remand in *Blackburn II*.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion to Dismiss in *Blackburn I* [**R. 9**, Civil No. 5:19-cv-00457-GFVT] is **DENIED AS MOOT**;

2. Plaintiff's Motion to Remand in *Blackburn I* [**R. 9**, Civil No. 5:19-cv-00457-GFVT] is **DENIED**;

3. Plaintiff's Motion to Remand in *Blackburn II* [**R. 6**, Civil No. 5:19-cv-00502-GFVT] is **GRANTED**;

4. Defendants' Motion to Dismiss in *Blackburn II* [**R. 5**, Civil No. 5:19-cv-00502-GFVT] is **DENIED AS MOOT**; and

5. The parties are **DIRECTED** to file supplemental briefing addressing the propriety of abstention in *Blackburn I* **within twenty-one (21) days of the date of this Order**. The parties' respective briefs should not exceed fifteen (15) pages, inclusive of exhibits.

This the 24th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge